UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

**15-20436**

**CR-GAYLES**

18 U.S.C. § 1349
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)(B)
42 U.S.C. § 1320a-7b(b)(1)(A)
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 2
18 U.S.C. § 982

MAGISTRATE JUDGE
TURNOFF

FILED by _____ D.C.

JUN 1 1 2015

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. - MIAMI

**UNITED STATES OF AMERICA**

**vs.**

**MILKA ALVAREZ,**
**JESUS MIGUEL PEREZ,**
**JOEL ALVAREZ,**
**SANDRA JARAMILLO,**
**ADOLFO LARREA,**
**and**
**MARIA TERESA PUPO,**

**Defendants.**
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.   The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered

Medicare.  Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) and a Federal health care program, as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare programs covering different types of benefits were separated into different program "parts."  "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4.      CMS did not directly pay Medicare Part A claims submitted by Medicare-certified HHAs.  CMS contracted with different private companies to administer the Medicare Part A program throughout different parts of the United States.  In the State of Florida, CMS contracted with Palmetto Government Benefits Administrators ("Palmetto").  As administrator, Palmetto was to receive, adjudicate and pay claims submitted by HHA providers under the Part A program for home health claims. Additionally, CMS separately contracted with companies in order to review HHA providers' claims data.  CMS first contracted with TriCenturion, a Program Safeguard Contractor.  Subsequently, on December 15, 2008, CMS contracted with SafeGuard Services, a Zone Program Integrity Contractor.  Both TriCenturion and SafeGuard Services safeguarded the Medicare Trust Fund by reviewing HHA providers' claims for potential fraud, waste, and/or abuse.

5.      Physicians, clinics and other health care providers, including HHAs, that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number."  A health care provider that received a Medicare provider number was able to file claims with

Medicare to obtain reimbursement for services provided to beneficiaries. A Medicare claim was required to set forth, among other things, the beneficiary's name and Medicare information number, the services that were performed for the beneficiary, the date that the services were provided, the cost of the services, and the name and provider number of the physician or other health care provider who ordered the services.

### Part A Coverage and Regulations

#### Reimbursements

6.      The Medicare Part A program reimbursed 100% of the allowable charges for participating HHAs providing home health care services only if the patient qualified for home health benefits.  A patient qualified for home health benefits only if the patient:

(a)      was confined to the home, also referred to as homebound;

(b)      was under the care of a physician who specifically determined there was a need for home health care and established the Plan of Care ("P.O.C."); and

(c)      the determining physician signed a certification statement specifying that the beneficiary needed intermittent skilled nursing, physical therapy, speech therapy, or a continued need for occupational therapy; the beneficiary was confined to the home; that a P.O.C. for furnishing services was established and periodically reviewed; and that the services were furnished while the beneficiary was under the care of the physician who established the P.O.C.

#### Record Keeping Requirements

7.      Medicare Part A regulations required HHAs providing services to Medicare patients to maintain complete and accurate medical records reflecting the medical assessment and diagnoses of their patients, as well as records documenting the actual treatment of patients to whom services were provided and for whom claims for reimbursement were submitted by the HHA. These medical records were required to be sufficiently complete to permit Medicare,

through Palmetto and other contractors, to review the appropriateness of Medicare payments made to the HHA under the Part A program.

8.      Among the written records required to document the appropriateness of home health care claims submitted under Part A of Medicare were a: (i) P.O.C. that included the physician order, diagnoses, types of services/frequency of visits, prognosis/rehab potential, functional limitations/activities permitted, medications/treatments/nutritional requirements, safety measures/discharge plans, goals, and the physician's signature; and (ii) a signed certification statement by an attending physician certifying that the patient was confined to his or her home and was in need of the planned home health services.

9.      Medicare Part A regulations required provider HHAs to maintain medical records of every visit made by a nurse, therapist, and home health aide to a beneficiary.  The record of a nurse's visit was required to describe, among other things, any significant observed signs or symptoms, any treatment and drugs administered, any reactions by the patient, any instruction provided to the patient and the understanding of the patient, and any changes in the patient's physical or emotional condition.  The home health nurse, therapist, and aide were required to document the hands-on personal care provided to the beneficiary as the services were deemed necessary to maintain the beneficiary's health or to facilitate treatment of the beneficiary's primary illness or injury.  These written medical records were generally created and maintained in the form of "clinical notes" and "home health aide notes/observations."

10.      Medicare regulations allowed Medicare certified HHAs to subcontract home health care services to nursing companies, therapy staffing services agencies, registries, or groups (nursing groups), which would bill the certified HHA.  The Medicare certified HHA would, in turn, bill Medicare for all services rendered to the patient.  The HHA's professional supervision

combine, conspire, confederate, and agree with Orelvis Olivera and with each other and with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

   a.  to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347; and

   b.  to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

  3.  It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) buying and selling fraudulent home health prescriptions; (b) submitting and causing the submission of false and fraudulent claims to Medicare; and (c) concealing the submission of false and fraudulent claims to Medicare.

## MANNER AND MEANS OF THE CONSPIRACY

  The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

18.     Defendant **JESUS MIGUEL PEREZ,** a resident of Miami-Dade County, was the president and registered agent of Mercy HH, and the secretary and director of D&D&D HH.

19.     Defendant **JOEL ALVAREZ,** a resident of Miami-Dade County, was the president, director and registered agent of D&D&D HH.

20.     Defendant **SANDRA JARAMILLO,** a resident of Miami-Dade County, was an operator of D&D&D HH.

21.     Defendant **ADOLFO LARREA,** a resident of Miami-Dade County, was the president and registered agent of L Medical.

22.     Defendant **MARIA TERESA PUPO** was a resident of Miami-Dade County.

23.     Orelvis Olivera, a resident of Miami-Dade County, was the president and registered agent of Acclaim HH.

24.     Individual 1 was a resident of Miami-Dade County.

### <u>COUNT 1</u>
### Conspiracy to Commit Health Care Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.      Paragraphs 1 through 15, Paragraphs 17 through 20, and Paragraphs 22 through 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2010, and continuing through at least in or around May 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILKA ALVAREZ,**
**JESUS MIGUEL PEREZ,**
**JOEL ALVAREZ,**
**SANDRA JARAMILLO,**
**and**
**MARIA TERESA PUPO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly

over subcontracted-for services required the same quality controls and supervision as of its own salaried employees.

11.     Medicare paid for insulin injections by an HHA when a beneficiary was determined to be unable to inject his/her own insulin and the beneficiary had no available caregiver able or willing to inject the beneficiary. The basic requirement that the beneficiary be confined to the home or be homebound was a continuing requirement for a Medicare beneficiary to receive home health benefits.

## The Defendants and Related Companies

12.     D&D&D Home Health Care, Inc. ("D&D&D HH") was a Florida corporation incorporated on or about February 22, 2006, that did business in Miami-Dade County as an HHA that purported to provide home health care services to eligible Medicare beneficiaries.

13.     Mercy Home Care, Inc. ("Mercy HH") was a Florida corporation incorporated on or about August 15, 2006, that did business in Miami-Dade County as an HHA that purported to provide home health care services to eligible Medicare beneficiaries.

14.     Acclaim Home Healthcare Inc. ("Acclaim HH") was a Florida corporation incorporated on or about August 7, 2007, that did business in Miami-Dade County as an HHA that purported to provide home health care services to eligible Medicare beneficiaries.

15.     Yava Medical Office, Inc. ("Yava Medical") was a Florida corporation incorporated on or about October 31, 2006, with its principal place of business in Miami-Dade County.

16.     L. Medical Supply Inc. ("L Medical") was a Florida corporation incorporated on or about November 18, 2014, with its principal place of business in Miami-Dade County.

17.     Defendant **MILKA ALVAREZ**, a resident of Miami-Dade County, was the president and registered agent of Yava Medical.

4.      **MARIA TERESA PUPO**, Individual 1, and their co-conspirators accepted kickbacks from **JESUS MIGUEL PEREZ, JOEL ALVAREZ, SANDRA JARAMILLO** and other co-conspirators in return for referring Medicare beneficiaries to Mercy HH and D&D&D HH to serve as patients.

5.      **MILKA ALVAREZ** and her co-conspirators at Yava Medical sold prescriptions for home health services that were not medically necessary to **MARIA TERESA PUPO**, Orelvis Olivera, Individual 1, and other co-conspirator patient recruiters.

6.      **JESUS MIGUEL PEREZ, JOEL ALVAREZ, SANDRA JARAMILLO, MARIA TERESA PUPO** and their co-conspirators used these prescriptions to cause several Miami-Dade County HHAs, including Mercy HH, D&D&D HH, and Acclaim HH, to submit false and fraudulent claims, via interstate wire, to Medicare seeking payment for home health services purportedly provided to Medicare beneficiaries when, in fact, such services were not medically necessary and not provided.

7.      As a result of such false and fraudulent claims, **MILKA ALVAREZ, JESUS MIGUEL PEREZ, JOEL ALVAREZ, SANDRA JARAMILLO, MARIA TERESA PUPO** and their co-conspirators caused Medicare to make payments to several Miami-Dade County HHAs, including Mercy HH, D&D&D HH, and Acclaim HH.

8.      **MILKA ALVAREZ, JESUS MIGUEL PEREZ, JOEL ALVAREZ, SANDRA JARAMILLO, MARIA TERESA PUPO** and their co-conspirators diverted the fraud proceeds for the personal use and benefit of themselves and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 13, Paragraphs 15 through 22, and Paragraph 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2010, and continuing through at least in or around May 2015, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**MILKA ALVAREZ,**
**JESUS MIGUEL PEREZ,**
**JOEL ALVAREZ,**
**SANDRA JARAMILLO,**
**ADOLFO LARREA,**
**and**
**MARIA TERESA PUPO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with Individual 1, each other and others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.      to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program;

b.      to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare;

c.      to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check, in return for referring an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare; and

d.      to violate Title 42 United States Code, 1320a-7b(b)(1)(B), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, ordering and arranging for and recommending purchasing, leasing, and ordering any good, facility, and service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (1) soliciting and receiving kickbacks and bribes from co-conspirator patient recruiters and home health clinic owners in return for dispensing prescriptions for home health care services; (2) offering, paying, soliciting, and receiving kickbacks and bribes in return for referring Medicare beneficiaries to Mercy HH and D&D&D HH to serve as patients; and (3) submitting and causing the submission of claims to Medicare for home health services that Mercy HH and D&D&D HH purported to provide to those beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **MILKA ALVAREZ** and her co-conspirators at Yava Medical solicited and accepted kickbacks and bribes from co-conspirator patient recruiters, including Orelvis Olivera, in return for providing prescriptions for home health care services.

5.      **JESUS MIGUEL PEREZ, JOEL ALVAREZ, SANDRA JARAMILLO, ADOLFO LARREA** and their co-conspirators offered and paid kickbacks to co-conspirator patient recruiters, including **MARIA TERESA PUPO**, in return for referring Medicare beneficiaries to Mercy HH and D&D&D HH to serve as patients.   Sometimes the kickbacks were paid to **MARIA TERESA PUPO** through Individual 1, who served as an intermediary.

6.      Co-conspirator patient recruiters such as **MARIA TERESA PUPO** used a portion of the money they received to pay kickbacks to co-conspirator recruited beneficiaries who agreed to serve as patients at Mercy HH and D&D&D HH, and kept a portion for their personal use and benefit.

7.      **MILKA ALVAREZ, JESUS MIGUEL PEREZ, JOEL ALVAREZ, SANDRA JARAMILLO, ADOLFO LARREA, MARIA TERESA PUPO**, Orelvis Olivera, and their co-conspirators caused conspirators at several Miami-Dade County home health agencies, including Mercy HH, D&D&D HH, and Acclaim HH, to submit claims to Medicare for home health services purportedly provided to the recruited Medicare beneficiaries.

8.      **MILKA ALVAREZ, JESUS MIGUEL PEREZ, JOEL ALVAREZ, SANDRA JARAMILLO, ADOLFO LARREA, MARIA TERESA PUPO**, Orelvis Olivera,  and their co-conspirators caused Medicare to pay Mercy HH, D&D&D HH, and Acclaim HH based upon the claims for home health services purportedly provided to the recruited Medicare beneficiaries.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.      On or about December 11, 2012, **MILKA ALVAREZ** signed a Medicare electronic data interchange enrollment application on behalf of Yava Medical.

2.      On or about December 4, 2014, **JESUS MIGUEL PEREZ** paid a cash kickback to Individual 1 in the approximate amount of $4,000.

3.      On or about February 3, 2015, **MILKA ALVAREZ** accepted a cash kickback from Individual 1, in the approximate amount of $400, in exchange for two prescriptions for home health services.

4.      On or about February 3, 2015, **SANDRA JARAMILLO** met with Individual 1 at D&D&D HH to discuss the amount of kickbacks owed to Individual 1, in return for referring patients to D&D&D HH.

5.      On or about February 25, 2015, **JOEL ALVAREZ** met with Individual 1 at D&D&D HH to discuss the amount of kickbacks owed to Individual 1, in return for referring two patients to D&D&D HH.

6.      On or about March 16, 2015, **JOEL ALVAREZ** met with Individual 1 at D&D&D HH to discuss the timing and amount of kickbacks owed to Individual 1, in return for referring patients to D&D&D HH.

7.      On or about March 16, 2015, **ADOLFO LARREA** paid a cash kickback to Individual 1, in the approximate amount of $3,600.

8.      On or about March 16, 2015, **MARIA TERESA PUPO** accepted a cash kickback in the approximate amount of $3,600, in return for referring patients to D&D&D HH, through Individual 1.

9.      On or about March 25, 2015, **SANDRA JARAMILLO** paid a cash kickback to Individual 1, in the approximate amount of $1,800.

10.     On or about March 25, 2015, **MARIA TERESA PUPO** accepted a cash kickback in the approximate amount of $1,600, in return for referring a patient to D&D&D HH, through Individual 1.

11.     On or about April 8, 2015, **JESUS MIGUEL PEREZ** paid a cash kickback to Individual 1, in the approximate amount of $3,600.

12.     On or about April 22, 2015, **ADOLFO LARREA** paid a cash kickback to Individual 1, in the approximate amount of $5,400.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 3-8
**Payment of Kickbacks in Connection with a Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1.      Paragraphs 1 through 13, Paragraph 18, Paragraphs 20 through 21, and Paragraph 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, as set forth below, did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service

for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, as set forth below:

| Count | Defendant | Approximate Date | Approximate Kickback Amount |
|---|---|---|---|
| 3 | JESUS MIGUEL PEREZ | December 4, 2014 | $ 4,000 |
| 4 | JESUS MIGUEL PEREZ | April 8, 2015 | $3,600 |
| 5 | JESUS MIGUEL PEREZ | April 28, 2015 | $5,400 |
| 6 | SANDRA JARAMILLO | March 25, 2015 | $1,800 |
| 7 | ADOLFO LARREA | March 16, 2015 | $3,600 |
| 8 | ADOLFO LARREA | April 22, 2015 | $5,400 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

## COUNTS 9-12
### Receipt of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(1)(A))

1.      Paragraphs 1 through 13, Paragraph 22 and Paragraph 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**MARIA TERESA PUPO,**

did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item

and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare, as set forth below:

| Count | Approximate Date | Approximate Kickback Amount |
|-------|-----------------|----------------------------|
| 9 | March 16, 2015 | $3,600 |
| 10 | March 25, 2015 | $1,600 |
| 11 | April 8, 2015 | $3,450 |
| 12 | April 22, 2015 | $1,800 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

**COUNT 13**
**Receipt of Kickbacks in Connection with a Federal Health Care Program**
**(42 U.S.C. § 1320a-7b(b)(1)(B))**

1.      Paragraphs 1 through 13, Paragraph 15, Paragraph 17, and Paragraph 24 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the date enumerated below, in Miami-Dade County, in the Southern District of Florida, the defendant,

**MILKA ALVAREZ,**

did knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for purchasing, leasing, and ordering and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, Medicare, as set forth below:

| Approximate Date | Approximate Kickback Amount | Payor of Kickback |
|---|---|---|
| February 3, 2015 | $400 | Individual 1 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(B) and Title 18, United States Code, Section 2.

## CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

1.     The allegations contained in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging criminal forfeiture to the United States of America of certain property in which the defendants,

**MILKA ALVAREZ,**
**JESUS MIGUEL PEREZ,**
**JOEL ALVAREZ,**
**SANDRA JARAMILLO,**
**ADOLFO LARREA,**
**and**
**MARIA TERESA PUPO,**

have an interest.

2.     Upon conviction of a violation alleged in Counts 1 through 13 of this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(7), all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation.

3.     The property which is subject to forfeiture includes, but is not limited to, a sum of money equal in value to the property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the federal healthcare offenses alleged in this Indictment, which the United States of America will seek as a forfeiture money judgment against the defendants upon conviction and as part of their respective sentence; and

All pursuant to Title 18, United States Code, Sections 982(a)(1),(7), and the procedures set forth in Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b).

A TRUE BILL

_____

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

GEJAA GOBENA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ANNE P. MCNAMARA
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA          CASE NO.          _____

vs.
                                  **CERTIFICATE OF TRIAL ATTORNEY***

MILKA ALVAREZ, et al.

                        **Defendants.**
_____ /     **Superseding Case Information:**

**Court Division:** (Select One)          New Defendant(s)      Yes _____    No _____
                                          Number of New Defendants      _____
  __X__ Miami      _____ Key West         Total number of counts        _____
  _____ FTL        _____ WPB    _____ FTP

          I do hereby certify that:

          1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of
                probable witnesses and the legal complexities of the Indictment/Information attached hereto.

          2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in
                setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28
                U.S.C. Section 3161.

          3.    Interpreter:      (Yes or No)      __Yes__
                List language and/or dialect       __Spanish_____

          4.    This case will take ____20____ days for the parties to try.

          5.    Please check appropriate category and type of offense listed below:

                (Check only one)                        (Check only one)

          I     0 to 5 days          _____       Petty        _____
          II    6 to 10 days         _____       Minor        _____
          II    11 to 20 days        __X____       Misdem.      _____
          IV    21 to 60 days        _____       Felony       __X____
          V:    61 days and over     _____

          6.    Has this case been previously filed in this District Court?    (Yes or No)    __No__
          If yes:
          Judge: _____    Case No. _____
          (Attach copy of dispositive order)
          Has a complaint been filed in this matter?    (Yes or No)    __No__
          If yes:
          Magistrate Case No.                      _____
          Related Miscellaneous numbers:           _____
          Defendant(s) in federal custody as of    _____
          Defendant(s) in state custody as of      _____
          Rule 20 from the _____    District of _____

          Is this a potential death penalty case? (Yes or No)    __No__

          7.    Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to
                October 14, 2003?      _____ Yes    __X__ No

          8.    Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to
                September 1, 2007?      _____ Yes    __X__ No


                                          _____
                                          ANNE P. McNAMARA
                                          DOJ TRIAL ATTORNEY
                                          Court No. A5501847

*Penalty Sheet(s) attached                                              REV 4/8/08

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   **MILKA ALVAREZ**

**Case No:**

Count #:   1

   18 U.S.C. § 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:   Twenty (20) years' imprisonment.

Count #:   2

   18 U.S.C. § 371

   Conspiracy to Defraud the United States and to Receive Health Care Kickbacks

**\*Max Penalty**:   Five (5) years' imprisonment.

Count #:   13

   42 U.S.C. § 1320a-7b(b)(1)(B)

   Receipt of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:   Five (5) years' imprisonment.

Count #:



\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   **JESUS MIGUEL PEREZ**

Case No: _____

Count #:   1

   18 U.S.C. § 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:   Twenty (20) years' imprisonment.

Count #:   2

   18 U.S.C. § 371

   Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks

**\*Max Penalty**:   Five (5) years' imprisonment.

Counts #:   3 - 5

   42 U.S.C. § 1320a-7b(b)(2)(A)

   Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:   Five (5) years' imprisonment as to each count.

Count #:

_____

_____

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**   __JOEL ALVAREZ__

**Case No:** _____

Count #:   1

  18 U.S.C. § 1349

  Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty:**    Twenty (20) years' imprisonment.

Count #:   2

  18 U.S.C. § 371

  Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

**\*Max Penalty:**    Five (5) years' imprisonment.

Count #:

_____

_____

\*Max Penalty:

Count #:

_____

_____

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:    **SANDRA JARAMILLO**

Case No: 

Count #:   1

   18 U.S.C. § 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:     Twenty (20) years' imprisonment.

Count #:   2

   18 U.S.C. § 371

   Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

**\*Max Penalty**:     Five (5) years' imprisonment.

Count #:   6

   42 U.S.C. § 1320a-7b(b)(2)(A)

   Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:     Five (5) years' imprisonment as to each count.

Count #:

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**  __**ADOLFO LARREA**__

**Case No:** _____

Count #:   2

___18 U.S.C. § 371___

___Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks___

**\*Max Penalty**:    Five (5) years' imprisonment.

Counts #:   7 - 8

___42 U.S.C. § 1320a-7b(b)(2)(A)___

___Payment of Kickbacks in Connection with a Federal Health Care Program___

\*Max Penalty:    Five (5) years' imprisonment as to each count.

Count #:

_____

_____

**\*Max Penalty**:

Count #:

_____

_____

\*Max Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:**   **MARIA TERESA PUPO**

**Case No:** _____

Count #:   1

   18 U.S.C. § 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:   Twenty (20) years' imprisonment.

Count #:   2

   18 U.S.C. § 371

   Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks

**\*Max Penalty**:   Five (5) years' imprisonment.

Counts #:   9 - 12

   42 U.S.C. § 1320a-7b(b)(1)(A)

   Receipt of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:   Five (5) years' imprisonment as to each count.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**